## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| **VICKIE ANN JONES,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **No. 3:13-CV-3219-BF** |
| | § | |
| **CAROLYN W. COLVIN,** | § | |
| **Acting Commissioner of Social Security,** | § | |
| | § | |
| **Defendant.** | § | |

## MEMORANDUM OPINION & ORDER

Plaintiff Vickie Ann Jones ("Plaintiff") brings this action for judicial review of the Commissioner of Social Security's ("Commissioner's") final decision denying her claim for supplemental security income under Title XVI of the Social Security Act pursuant to 42 U.S.C. § 405(g). For the following reasons, the final decision of the Commissioner is REVERSED and this case is REMANDED for further proceedings consistent with this opinion.

## Background

Plaintiff alleges that she is disabled due to a variety of ailments, including depression, anxiety attacks, back pain, and hallucinations. *See* Tr. [D.E. 14-1 at 54]. After her application for supplemental security income was denied initially and on reconsideration, Plaintiff requested a hearing before an administrative law judge ("ALJ"). That hearing was held on January 17, 2012. *Id.* [D.E. 14-1 at 47]. At the time of the hearing, Plaintiff was 49 years old. *Id.* [D.E. 14-1 at 37]. Plaintiff has worked in the past as a sandwich maker, janitor, laundry keeper, navigator, and a dietary aide. *Id.* [D.E. 14-1 at 75; 14-2 at 54-55]. Plaintiff has given conflicting reports about her education, reporting at different times that she completed 10, 11 or 12 years of school. *Id.* [D.E. 14-2 at 54; 14-4

at 7, 73]. Plaintiff has not engaged in substantial gainful activity since April 14, 2010. *Id.* [D.E. 14-1 at 23].

The ALJ found that Plaintiff was not disabled and therefore not entitled to supplemental security income. *Id.* [D.E. 14-1 at 39]. Although the ALJ determined that Plaintiff had the following severe impairments: major depressive disorder, degenerative disc and joint disease of the lumbar spine, mild degenerative changes of the left knee and bilateral hips, and morbid obesity, the severity of those impairments did not meet or equal any impairment listed in the social security regulations. *Id.* [D.E. 14-1 at 25]. The ALJ further determined that Plaintiff had the residual functional capacity ("RFC") to perform light work except that she is limited to no more than occasional climbing, balancing, stooping, crouching, crawling, or kneeling, with no exposure to hazards, including unprotected heights, open flames, dangerous machinery, or driving a vehicle. *Id.* [D.E. 14-1 at 28]. Plaintiff was further limited to work activities that require the ability to understand, remember, and carry out 1-2 step instructions, with no more than occasional contact with others. *Id.* [D.E. 14-1 at 28]. The ALJ determined that Plaintiff could not return to her past relevant work. *Id.* [D.E. 14-1 at 37]. Relying on the testimony of a vocational expert, the ALJ determined that Plaintiff was capable of working as a garment sorter, nut and bolt assembler, and laundry folder - jobs that exist in significant numbers in the national economy. *Id.* [D.E. 14-1 at 38]. Plaintiff appealed that decision to the Appeals Council. *Id.* [D.E. 14-1 at 5]. The Council affirmed. *Id.* [D.E. 14-1 at 5]. Plaintiff then filed this action in federal district court.

## **Legal Standards**

A claimant must prove that he is disabled for purposes of the Social Security Act to be entitled to social security benefits. *Leggett v. Chater*, 67 F.3d 558, 563-64 (5th Cir. 1995); *Abshire*

*v. Bowen*, 848 F.2d 638, 640 (5th Cir. 1988). The definition of disability under the Act is "the inability to engage in any substantial gainful activity by reason of any medically-determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *Anthony v. Sullivan*, 954 F.2d 289, 292 (5th Cir. 1992).

The Commissioner utilizes a sequential five-step inquiry to determine whether a claimant is disabled. Those steps are that:

(1)     an individual who is working and engaging in substantial gainful activity will not be found disabled regardless of medical findings;

(2)     an individual who does not have a "severe impairment" will not be found to be disabled;

(3)     an individual who meets or equals a listed impairment in Appendix 1 of the regulations will be considered disabled without consideration of vocational factors;

(4)     if an individual is capable of performing the work the individual has done in the past, a finding of "not disabled" will be made; and

(5)     if an individual's impairment precludes the individual from performing the work the individual has done in the past, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed.

*Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994) (citing *Villa v. Sullivan*, 895 F.2d 1019, 1022 (5th Cir. 1990) (paraphrasing 20 C.F.R. § 404.1520(b)-(f)).

The burden of proof lies with the claimant to prove disability under the first four steps of the five-step inquiry. *Leggett*, 67 F.3d at 564. The burden of proof shifts to the Commissioner at step

3

five of the inquiry to prove that other work, aside from the claimant's past work, can be performed by the claimant. *Bowling v. Shalala*, 36 F.3d 431, 435 (5th Cir. 1994) (citing *Anderson v. Sullivan*, 887 F.2d 630, 632-33 (5th Cir. 1989)). If the Commissioner demonstrates that other jobs are available to the claimant, the burden of proof shifts back to the claimant to rebut such a finding. *Selders v. Sullivan* , 914 F.2d 614, 618 (5th Cir. 1990).

The Commissioner's determination is afforded great deference. *Leggett*, 67 F.3d at 564. Judicial review of the Commissioner's findings is limited to whether the decision to deny benefits was supported by substantial evidence and to whether the proper legal standard was utilized. *Greenspan*, 38 F.3d at 236; 42 U.S.C.A. § 405(g). Substantial evidence is defined as "that which is relevant and sufficient for a reasonable mind to accept as adequate to support a conclusion; it must be more than a scintilla, but it need not be a preponderance." *Leggett*, 67 F.3d at 564. The reviewing court does not re-weigh the evidence, retry the issues, or substitute its own judgment, but rather scrutinizes the record as a whole to determine whether substantial evidence is present. *Greenspan*, 38 F.3d at 236.

## Analysis

Plaintiff contends that the ALJ committed reversible error by failing to obtain testimony from a medical expert at the administrative hearing. Pl.'s Br. [D.E. 18 at 4]. Plaintiff contends that the ALJ should have obtained testimony from a medical expert regarding Plaintiff's failure to follow prescribed treatment pursuant to the agency's Hearing, Appeals, and Litigation Law Manual ("HALLEX") since the ALJ's determination that Plaintiff was not compliant with her prescribed treatment was at the center of her decision finding Plaintiff not disabled. *See* Pl.'s Br [D.E. 18 at 4]. Plaintiff contends that as a result of the ALJ's unsupported finding that Plaintiff was not compliant

4

with treatment, she discounted Dr. Melvyn Berke's opinion who performed a clinical interview with

a mental status examination on January 10, 2011 at the request of Disability Determination Services

("DDS"). *See id.* [D.E. 18 at 5]. Plaintiff argues that the ALJ decided to "play doctor" and

improperly evaluated Plaintiff's compliance issues and dosing rather than obtaining testimony from

a medical expert who would be able to properly assess whether Plaintiff's mental condition was the

result of noncompliance or improper dosing and medication. *See id.* [D.E. 18 at 6].

The Commissioner argues that the ALJ was permitted to obtain further testimony from a

medical expert, but was not required to do so under HALLEX. *See* Def.'s Br. [D.E. 19 at 6]. Further,

the Commissioner contends that the ALJ did not exclusively rely on Plaintiff's noncompliance with

treatment when she evaluated Plaintiff's credibility with respect to her symptoms. *See id.* [D.E. 19

at 7]. In addition, the Commissioner argues that even if the ALJ failed to comply with HALLEX,

Plaintiff failed to show that such failure caused her harm. *See id.* [D.E. 19 at 7]. The Commissioner

contends that the ALJ set forth many factors as to why Plaintiff's subjective complaints were not

credible and the ALJ's assessment satisfies the requirements of the applicable regulations and

rulings. *See id.* [D.E. 19 at 7].

In evaluating Plaintiff's mental condition, the ALJ discussed the opinions of Dr. Susanne

Fletcher and Dr. Melvyn Berke, both of whom performed psychological consultative examinations

at the requests of DDS, as well as the opinions of Plaintiff's mental health providers, Dr. Kristen

Grable and Nurse Practitioner Karla Smith-Lucas. *See* Tr. [D.E. 14-1 at 32-37]. While the ALJ stated

that she gave significant weight to the opinions of the state agency psychological consultants, the

ALJ also stated that she gave little weight to Dr. Berke's opinion because it was based primarily on

Plaintiff's self report. *See id.* [D.E. 14-1 at 37]. The ALJ also explained that she believed Dr. Berke's

opinion was influenced by inaccurate information as Dr. Berke thought Plaintiff had ineffective medication whereas Plaintiff did not take her medications as prescribed. *See id.* [D.E. 14-1 at 35, 37]. As noted by the ALJ, Dr. Berke diagnosed Plaintiff with Major Depressive Disorder, Recurrent, with Psychotic Features, with a Global Assessment of Functioning ("GAF") of 45 (serious symptoms such as suicidal ideation, severe obsessional rituals, frequent shoplifting, or serious impairment in social, occupational, or school functioning such as no friends or inability to keep a job). *See id.* [D.E. 14-1 at 35]. However, the ALJ stated that she was not persuaded that Plaintiff's symptoms rendered her unable to perform the mental requirements of work activities on a sustained basis even with her poor compliance with treatment. *See id.* [D.E. 14-1 at 35]. Further, the ALJ indicated that she gave little to no weight to the January 5, 2012 opinion of Dr. Grable and Nurse Practitioner Smith-Lucas finding that Plaintiff had a substantial loss of ability to perform certain mental activities in regular, competitive employment and, at best, could only do so in a sheltered work setting where special considerations and attention were provided because their opinion was not well supported nor consistent with other substantial evidence in the record. *See id.* [D.E. 14-1 at 36].

As observed by the ALJ, Dr. Fletcher diagnosed Plaintiff at her July 19, 2010 examination with Major Depressive Disorder, Single Episode, Severe with Psychotic Features and a Pain Disorder Associated with Both Psychological Factors and a General Medical Condition with a GAF of 52 (moderate symptoms such as flat affect, circumstantial speech, or occasional panic attacks) or moderate difficulty in social, occupational, or school functioning such as few friends or conflicts with peers or co-workers). *See id.* [D.E. 14-1 at 33]. While the ALJ's basis for giving little weight to Dr. Berke's more recent January 10, 2011 psychological consultative examination was that it was largely based on Plaintiff's self report, Dr. Fletcher's psychological report demonstrates that it is

6

similarly based on Plaintiff's self report. *See id.* [D.E. 14-1 at 37; 14-4 at 6-9]. In addition, while the ALJ noted that Dr. Grable did not have the benefit of an ongoing personal observation and professional assessment of Plaintiff sufficient to form an opinion regarding Plaintiff's mental abilities because Dr. Grable only saw Plaintiff once on October 19, 2010, Dr. Fletcher also only saw Plaintiff once on July 19, 2010. *See id.* [D.E. 14-1 at 33, 35; 14-4 at 6]. Further the ALJ gave little to no weight to Nurse Practitioner Smith-Lucas' January 5, 2012 opinion regarding Plaintiff's substantial loss of ability to perform mental activities even though the ALJ observed that Nurse Practitioner Smith-Lucas saw Plaintiff 12 times after Dr. Fletcher's July 19, 2010 examination. *See id.* [D.E. 14-1 at 33-37]. While the ALJ noted that Nurse Practitioner Smith-Lucas "saw [Plaintiff] more consistently than any other mental health provider," she gave little to no weight to her assessment regarding Plaintiff's mental condition. *See id.* [D.E. 14-1 at 35-36].

While the ALJ explained that she gave little or no weight to Dr. Grable and Nurse Practitioner Smith-Lucas' January 5, 2012 assessment regarding Plaintiff's mental condition because it " is not well supported and is not consistent with the other substantial evidence in the case record," the only mental health evaluation discussed by the ALJ which supports her finding with respect to Plaintiff's mental state is the one evaluation by Dr. Fletcher based on Plaintiff's self report conducted nearly two years prior to the ALJ's decision. *See id.* [D.E. 14-1 at 33, 35-36]. Therefore, the Court is not able to determine what substantial evidence the ALJ is referring to since she gave little to no weight to the more recent psychological examination performed by Dr. Berke and the opinion of Plaintiff's health care providers, Dr. Grable and Nurse Practitioner Smith-Lucas whom the ALJ acknowledges as having seen Plaintiff numerous times subsequent to Dr. Fletcher's examination. Given that the ALJ discredited most of the examining mental health professionals' opinions she

7

discussed in her decision, including opinions of those who assessed Plaintiff much more frequently and at times much more recent than that of Dr. Fletcher, and given the fact that the reasons given for discrediting those mental health professionals' opinions are equally applicable to Dr. Fletcher's assessment, the ALJ's decision is not supported by substantial evidence.

### Conclusion

For the reasons stated above, the final decision of the Commissioner is REVERSED and this case is REMANDED for further proceedings consistent with this opinion.

SO ORDERED, this 29th day of September, 2014.

PAUL D. STICKNEY
UNITED STATES MAGISTRATE JUDGE

8